IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SWEENEY | : | Civ. No. 4:11-CV-01691 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ROCHE DIAGNOSTICS CORP., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
December 19, 2013

The case before the Court concerns a quarrel between Benjamin Sweeney

("Plaintiff" or "Sweeney") and his former employer, Roche Diagnostics

Corporation ("Defendant" or "Roche").[1]  In a classic conflict between a

controversial supervisor and his dejected salesman, Sweeney contends that Roche

terminated his employment not for the legitimate reasons they allege, but due to

age and sex discrimination by his manager, Michael DeFeo.  Consequently,

Sweeney brought this action against Roche under Title VII of the Civil Rights Act

of 1964 ("Title VII), 42 U.S.C. § 2000 et seq., the Age Discrimination and

---

[1] Roche Diagnostics Corporation describes itself, through its attorneys, as "a worldwide diagnostics company offering innovative and pioneering analytical and data management systems for the prevention, diagnosis, evaluation and monitoring of diseases.  Roche's customers include hospitals and health care facilities, laboratories, physician's offices and pharmacies." Def.'s SOF ¶ 1.

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human

Rights Act ("PHRA"), 43 Pa. C.S.A. § 955 et seq.

This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §

1331, 42 U.S.C. § 2000 et seq., and 29 U.S.C. § 621 et seq.  The Court has

jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Both Sweeney and Roche filed motions for summary judgment (ECF Nos.

30, 32) that are fully briefed and ripe for disposition.  For the reasons hereinafter

discussed, both parties's motions for summary judgment are denied.

## I.     BACKGROUND

Benjamin Sweeney worked as an employee for Roche Diagnostics

Corporation from 2001 until he was terminated in 2009**.**  Pl.'s Statement Material

Facts ¶¶ 4, 22, Sept. 13, 2012, ECF No. 30-1 [hereinafter Pl.'s SOF].  Sweeney is a

white male born in 1952.  Pl.'s SOF ¶ 1.  He obtained a Bachelor of Science

Degree in Business Administration from Pennsylvania State University in 1980.

Id. ¶ 2.  From 1984 to 1996, and again from 1997 to 2001, Sweeney worked as a

sales representative for several companies selling equipment and products to

hospitals, and gained experience pertinent to his subsequent employment at Roche.

Id. ¶ 3.

As a Roche employee, Sweeney worked as an Account Manager from 2001

until he was awarded the title Account Executive in 2008.  Pl.'s SOF ¶ 4; Def.'s Statement Facts ¶ 24, Sept. 18, 2012, ECF No. 34 [hereinafter Def.'s SOF].  As an Account Manager, Sweeney was expected to, *inter alia*, manage Roche's relationship with its existing customers in his territory, sell Roche's products to these customers (characterized by Roche as "left-side" business), and grow Roche's business by developing customer prospects with the hope of acquiring new clients (characterized as "right-side" business).  Def.'s SOF ¶ 3; Pl.'s Resp. Def.'s Statment Facts ¶ 3, Oct. 9, 2012, ECF No. 46-1 [hereinafter Pl.'s Resp.].

During his tenure as Account Manager, Sweeney generally received positive performance reviews.  Def.'s SOF ¶¶ 8–23. He was, however, criticized for failing to develop right-side business on several occasions.  Id.  Sweeney was primarily focused on his predominant client, Geisinger Medical Center ("Geisinger"). Although he was often praised for doing "an excellent job keeping high volume customers [*i.e.* Geisinger] from competitive conversion," he did not demonstrate a "balanced performance" and was consistently admonished for failing to pursue new accounts.  Id. ¶¶ 13, 16.

Michael DeFeo, Sweeney's supervisor from 2007 onward who is the predominant focus of this lawsuit, gave Sweeney a rating stating he only "Partially

Achieved"[2] his performance objectives in 2007, based on his right-side business failures. Id. ¶ 21. DeFeo observed that Sweeney tended to be conservative in his approach to selling, but hoped that he could become more aggressive and "develop a stronger right side strategy." Id. ¶ 22. DeFeo's supervisor reviewed and approved that Performance Appraisal before it was delivered to Sweeney. Id. During the same performance review cycle, DeFeo gave another Roche employee, Carmen Brown-Marshall, an overall score of "Exceeds Most." Id. ¶ 23. DeFeo gave Jennifer Smith, an Account Manager in her 30s, a satisfactory score of "Fully Achieved." Id. ¶ 23.

Despite his previous right-side failures, Roche saw fit to award Sweeney the title of Account Executive during a reorganization in 2008. This transition took place under DeFeo's supervision. Def.'s SOF ¶ 24. Also during that 2008 reorganization, Roche discharged employees who were thirty-nine (39) and forty-eight (48) years old, while retaining Sweeney (fifty-six (56) years old at the time), a fifty (50) year old employee and a thirty-four (34) year old employee. Id. ¶¶ 26, 27. Comparably, DeFeo hired two employees as Account Executives in 2008: Lynne Ciccarelli, a fifty-one (51) year old woman, and Scott Magowan, a fifty-

---

[2] The available rating criteria under Roche's five step grading scale include, in descending order of competency: "Outstanding, Exceeds Most, Fully Achieved, Partially Achieved, and Not Achieved." Def.'s SOF ¶ 21.

three (53) year old man.  Id. ¶ 27.  DeFeo subsequently gave Ciccarelli an

"Exceeds Most" rating on her 2008 and 2009 Performance Appraisals, and

"Outstanding" on her 2010 Performance Appraisal.  Id. ¶¶ 27.  Magowan received

a "Fully Achieved" on his 2008 Performance Appraisal, but subsequently left the

company alleging that DeFeo created a hostile work environment and

discriminated against him because of his age and sex.  Def.'s SOF ¶¶ 27; Pl.'s Br.

Opp'n Def.'s Mot. Summ. J. 2, Oct. 9, 2012, ECF No. 45 [hereinafter Pl.'s Br.

Opp'n].

By contrast, Sweeney continued his disappointing performance regarding

right-side business development during his tenure as Account Executive and

achieved poor performance ratings as a result.  See, e.g., Def.'s SOF ¶¶ 31, 33

Indeed, Sweeney appeared to rely on his primary account, Geisinger Medical

Center, for the vast majority of his sales.  When he began work at Roche, Geisinger

comprised approximately seventy-five percent (75%) of the business in his

territory.  Id. ¶ 4.  At the time of his discharge, Geisinger constituted approximately

ninety-seven percent (97%) of his territory's revenue and ninety-eight percent

(98%) of the territory growth, while only one other account contributed the

remaining three percent (3%) of his revenue.  Id. ¶ 30.

Because Roche viewed this undiversified territory as an unacceptable risk,

DeFeo prepared a Performance Improvement Plan (PIP) with specified objectives for Sweeney to complete and offered his help and support in an effort to change Sweeney's disturbing status quo. Id. ¶ 44. DeFeo's supervisor and Roche's Human Resources (HR) department approved the plan, which he then delivered to Sweeney on July 16, 2009. Id. ¶¶ 44–45. The PIP stated that Sweeney's performance would be reviewed over the following ninety (90) days, and that if he failed to meet and consistently maintain the Plan's specified objectives, he risked termination from employment. Id. ¶ 47. Sweeney failed to materially statisfy the terms of the Plan and was subsequently discharged on November 4, 2009 with the approval of DeFeo's supervisor and Roche's HR department. Id. ¶¶ 45–55.

DeFeo hired Erica Holloway, a woman in her 30s, to replace Sweeney. Pl.'s Br. Opp'n, at 1. In slightly over one year in the position, Holloway made two sales of equipment to a new customer but otherwise generated little right-side business. Def.'s SOF ¶ 58; Pl.'s Resp. ¶ 58. She received satisfactory performance appraisals from DeFeo and was not put on a Performance Improvement Plan. Pl.'s Br. Opp'n at 1. Based on this and numerous other allegations, Sweeney exhausted his administrative remedies under the United States Equal Employment Opportunity Commission and then filed the present suit alleging discrimination based on his age and sex in violation of Title VII, ADEA, and the PHRA. See

generally Pl.'s Compl., Sept. 8, 2011, ECF No. 1 [hereinafter Pl.'s Compl.].

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the court weighs the evidence presented, "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal citations omitted).  The moving party may meet this burden by either (1) submitting positive evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Regardless of who bears the burden of persuasion at trial, the party moving

for summary judgment has the burden to show an absence of genuine issues of material fact.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted).  To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'"  Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim.  Country Floors, Inc. v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

To the contrary, when the moving party bears the burden of persuasion at trial, it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of material facts.  Nat'l State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).  If the moving party does not meet this burden, the court must deny summary judgment.  Id.

Once the moving party satisfies this initial burden, the nonmoving party

"must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Moreover, when opposing summary judgment, the nonmovant "may not rest upon mere allegations, general denials, or . . . vague statements," but rather must "identify those facts of record which would contradict the facts identified by the movant." <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2003) (internal quotations and citation omitted).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249. Affidavits and declarations may be used to support a motion, but the court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 54(a).  The factfinder is responsible for credibility

determinations, not the district court.  <u>BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions.  <u>Weissman v. United States Postal Serv.</u>, 19 F. Supp. 2d 254, 259 (D.N.J. 1998). When ruling on cross motions for summary judgment, the court must consider the motions independently, <u>Williams v. Philadelphia Housing Authority</u>, 834 F. Supp. 794, 797 (E.D. Pa. 1993), <u>aff'd,</u> 27 F.3d 560 (3d Cir. 1994), and view the evidence presented for each motion in the light most favorable to the nonmoving party.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**B.** ***McDonnell Douglas* Test**

Sweeney alleges that Roche discriminated against him because of his age and sex in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the 42 U.S.C. § 2000 et seq., and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. C.S.A. § 955 et seq.  Both the federal and state claims are considered under the same analytical framework.  <u>See, e.g.</u>, <u>Greenawalt v. Clarion Cnty.</u>, 459 Fed. App'x 165, 168 n. 1 (3d Cir. 2012); <u>Vernon v. A&L Motors</u>, 381 Fed. App'x 164, 166 n. 5 (3d Cir. 2010).  Because Sweeney offers no direct evidence of discrimination, this case is scrutinized under

the vertigo-inducing, burden-shifting analysis established by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas framework, a plaintiff's claim requires a three-step burden-shifting analysis. See McDonnell Douglas Corp., 411 U.S. at 801–06; Morrissey v. Luzerne Cnty. Cmty., 117 Fed. App'x 809, 812 (3d Cir. 2004). First, the plaintiff must establish a *prima facie* case of discrimination, producing evidence for each element of the claim. See Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004). If the plaintiff satisfies this requirement, the burden of production then shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for its action. McDonnell Douglas Corp., 411 U.S. at 802. Finally, if the defendant does articulate a legitimate motive, the burden then shifts back to the plaintiff who must demonstrate "by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). A plaintiff may evince pretext by establishing that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d

101, 105 (3d Cir. 2000).

The Court now considers the first portion of the analysis: Sweeney's *prima facie* case.

### 1) *Prima facie* Case of Discrimination

To establish a *prima facie* case of age or sex discrimination, Sweeney must prove by a preponderance of the evidence that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination. See, e.g., Ullrich v. U.S. Sec'y of Veterans Affairs, 457 Fed. App'x 132, 138 (3d Cir. 2012). Moreover, in "reverse discrimination"[3] cases such as this, the *prima facie* test has been modified to require "the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999).

In the instant case, the Defendant does not dispute that Sweeney satisfies the

---

[3] "Reverse discrimination" refers to the phenomenon of discrimination against an individual in a group that is not a traditional suspect class subject to discrimination, such as a majority group in a race discrimination case or males in a sex discrimination case. See, e.g., Iadimarco v. Runyon, 190 F.3d 151, 155–56 (3d Cir. 1999); see also McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 (1976) ("The Act prohibits All racial discrimination in employment, without exception for any group of particular employees . . . .").

first and third prongs of the *prima facie* case. He is within the protected class for age discrimination under the ADEA, because he was over forty (40) years old when the alleged discrimination occurred. 29 U.S.C. § 631(a); Sarullo, 352 F.3d at 798. Sweeney is a male, which is within the protected class in a reverse sex discrimination claim under Title VII. See Iadimarco, 190 F.3d at 155. Furthermore, Sweeney undoubtedly suffered an adverse employment action—he was discharged. See Sarullo, 352 F.3d at 798.

The Defendant disputes, however, the second and fourth prongs of the *prima facie* case. See Def.'s Br. Supp. Mot. Summ. J. 5–10, Sept. 18, 2012, ECF No. 33 [hereinafter Def.'s Br. Supp.]. Roche argues that Sweeney was not qualified for his position at the time he was fired because he was not fulfilling Roche's subjective performance expectations, although he was meeting his sales quota. Id. at 5–8. Furthermore, Roche argues that Sweeney is unable to produce evidence that the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination. Id. at 9–10. The Court considers these elements in turn.

i)    Plaintiff is Objectively Qualified for the Position

Given the facts of this case, the existing precedent, and the nature of the McDonnell Douglas framework, it is most appropriate to consider the Plaintiff's

qualifications for the position in question under an objective standard at the *prima facie* stage, rather than considering the employer's subjective expectations. See, e.g., Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 938 (3d Cir. 1997); Weldon v. Kraft, 896 F.2d 793, 798 (3d Cir. 1990). In McDonnell Douglas, the "Court cautioned that there is no rigid formula of a prima facie case and the requirements may vary with 'differing factual situations.'" Matczak,136 F.3d at 938 (quoting McDonnell Douglas Corp., 411 U.S. at 802 n. 13); see also Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978) ("This, of course, was not intended to be an inflexible rule . . . ."). This flexible test spawned discordant progeny on this issue of an employee's qualifications both within the United States Court of Appeals for the Third Circuit and among the various Courts of Appeals. Compare Matczak, 136 F.3d at 939 with Detz v. Greiner Indus., 346 F.3d 109, 119 (3d Cir. 2003); see also Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

The existing conflict on the qualifications prong of the *prima facie* case concerns whether the Court should consider the employee's objective qualifications, such as education and experience in light of the job's stated requirements, or whether the Court should consider if the employee was also meeting the employer's subjective expectations at the time of termination. See,

e.g., Matczak, 136 F.3d at 938–39.  The weight of authority in the Third Circuit stands for the proposition that a plaintiff's subjective qualifications should not be considered at the *prima facie* stage of the McDonnell Douglas analysis; whether a plaintiff subjectively fulfilled an employer's expectations is more appropriately considered during the pretext stage of the analysis, because those alleged shortcomings are more probative of the employer's motivation to discharge the employee (if it was indeed a legitimate discharge) than they are probative of the employee's actual qualifications.  See, e.g., Fayewicz v. Redner's Markets, Inc., CIV.A. 09-2596, 2010 WL 1644626, at *8  (E.D. Pa. Apr. 23, 2010) (citing Fowle v. C & C Cola, 868 F.2d 59, 64 (3d Cir. 1989); Matczak, 136 F.3d at 939 (3d Cir. 1998).  In Matczak v. Frankford Candy and Chocolate Co., Judge Lewis of the Third Circuit elucidated:

> Determining whether [the plaintiff] satisfied his employer's expectations is, by its very nature, a subjective assessment.  Obviously, we cannot evaluate an employer's expectations to see if they have been satisfied as we can objective measures such as, say, educational requirements.  In light of this fact, our past rulings prevent satisfaction of an employer's expectations from being a requisite element of a prima facie employment discrimination case.  We have held that "while objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality . . . is better left to the later stage of the McDonnell Douglas analysis."  Weldon v. Kraft, 896 F.2d 793, 798 (3d Cir. 1990).  The

15

> rationale behind this position is that "subjective
> evaluations are more susceptible of abuse and more likely
> to mask pretext" and, for that reason, are better examined
> at the pretext stage than at the prima facie stage. Id.

Matczak, 136 F.3d at 938–39 (some internal quotations and citations omitted).

Based in part on this reasoning, the Third Circuit overturned the district court's decision granting summary judgment for the defendant employer. Id. at 938–40. The Third Circuit held, *inter alia*, that satisfaction of an employer's expectations was not an element of a *prima facie* case of employment discrimination and remanded the case for further proceedings. Id. at 940. In the wake of this decision, many courts within the circuit applied this cogent line of reasoning to their analyses. See, e.g., Slotterback v. Knoebel, 3:CV-07-0341, 2009 WL 1011052, at *8 (M.D. Pa. Apr. 14, 2009) (Vanaskie, J.); Smith v. Twp. of E. Greenwhich, 519 F. Supp. 2d 493, 507 (D.N.J. 2007); Galante v. Cox, CIV.A. 05-6739, 2006 WL 3069461, at *6 (E.D. Pa. Oct. 25, 2006) (Stengel, J.); Fitzpatrick v. Nat'l Mobile Television, 364 F. Supp. 2d 483, 489 (M.D. Pa. 2005) (Munley, J.) ("[A] subjective analysis of a plaintiff's job performance is inappropriate at the prima facie stage, and is properly suited as a legitimate nondiscriminatory reason for termination. . . . The proper inquiry is whether the plaintiff is objectively qualified to perform the job. . . ."); Harry v. City of Philadelphia, CIV.A. 03-661,

2004 WL 1387319, at *3 (E.D. Pa. June 18, 2004) (Yohn, J.).[4]

In <u>Detz v. Greiner Indus., Inc.</u>, 346 F.3d 109, 119 (3d Cir. 2003), however, the Third Circuit affirmed a district court decision holding the plaintiff was judicially estopped from proceeding on his age discrimination claim because he could not satisfy the "qualified" prong of the prima facie case due to his previous

---

[4] Courts in other circuits find this analysis similarly persuasive. <u>See, e.g.</u>, <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 575 (6th Cir. 2003) ("[A] court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job."); <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1298 (D.C. Cir. 1998); <u>MacDonald v. E. Wyo. Mental Health Ctr.</u>, 941 F.2d 1115, 1121 (10th Cir. 1991) (holding that a plaintiff can demonstrate that she is qualified by presenting "credible evidence that she continued to possess the objective qualifications she held when she was hired.").

Moreover, scholarly concurrence further bolsters the cogency of this reasoning:

> Most courts have held that where subjective qualifications, such as interpersonal skills, are at issue, a plaintiff is not required to prove during a prima facie case that he or she held these qualifications; rather, this inquiry is more appropriately made during the employer's rebuttal, during which the employer must explain the need for, and the plaintiff's lack of, the subjective qualifications at issue.
>
> . . . .
>
> The qualification requirement in a discharge context can become confused with the employer's showing of a legitimate nondiscriminatory reason for discharge . . . . [A]dequacy of job performance is properly a part of the defendant's burden of showing a nondiscriminatory reason for the discharge, and the plaintiff has ample opportunity to address the question of pretext. . . . This means in effect that the qualification requirement would be almost a formality in discharge cases; but why shouldn't an employee be presumed qualified for a position for which he or she has already been hired?

1-8 LARSON ON EMPLOYMENT DISCRIMINATION §§ 8.02(3); 8.08(4).

comments to the Social Security Administration (SSA) regarding his disability and inability to work. Articulating the standard for analysis, Judge Rendell wrote: "[t]o be 'qualified' a plaintiff must have been 'performing his job at a level that met his employer's legitimate expectations' at the time of his discharge." Detz, 346 F.3d at 119 (citing Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1314–15 (4th Cir. 1993)). Because the plaintiff stated to the SSA he was unable to work, he was judicially estopped from asserting that he was qualified to perform his job at a level that met his employer's expectations. Id.

The subjective qualification standard articulated in Detz seemingly contradicts both the established precedent in the Third Circuit and the well-reasoned analyses of many other Courts of Appeals and District Courts. Although the Third Circuit is seemingly conflicted over which standard applies in this analysis, fortunately it is clear on the standard for conflicting opinions: "[t]his Circuit has long held that if cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents." U.S. v. Rivera, 365 F.3d 213, 213 (3d Cir. 2004); see also Kossler v. Crisanti, 564 F.3d 181, 194 n. 8 (3d Cir. 2009); Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir. 2008). Therefore, to the extent the Detz decision conflicts with the objective qualification standard articulated in Matczak and Weldon, the objective standard controls. See

Rivera, 365 F.3d at 213.

In addition to the existing precedent, this Court finds it is most appropriate to invoke the objective qualification standard, given the flexible nature of the *prima facie* test in the McDonnell Douglas framework, the facts of this case, and the persuasive analyses supporting application of that standard. As a further point of distinction, many subsequent cases citing Detz for support on this point concerned physically disabled employees and whether they were qualified for the physical demands of their job, rather than the subjective elements inherent in a sales position. See, e.g., Czapinski v. Iron City Indus. Cleaning Corp., 355 Fed. App'x 633, 634–35 (3d Cir. 2009); Devine v. Transp. Intern. Pool, Inc., CIV.A. 06-986, 2007 WL 3033776, at *4–5 (W.D. Pa. Oct. 16, 2007).

Applying the objective qualification standard to this case, Sweeney presents evidence of his employment qualifications sufficient to meet his *prima facie* burden to survive summary judgment. See, e.g., Matczak, 136 F.3d at 938–39. As noted above, Sweeny obtained a Bachelor of Science Degree in Business Administration from Pennsylvania State University in 1980. Pl.'s SOF ¶ 2. Prior to his employment at Roche, Sweeney worked as a sales representative for several companies within the industry, selling equipment and products to hospitals from 1984 to 1996 and from 1997 to 2001 when he was hired by Roche. Id. ¶¶ 3–4.

19

Sweeney's performance reviews during his tenure as Account Manager at Roche were generally positive—they were undoubtedly sufficient for Roche to promote Sweeney to Account Executive.  Id. ¶ 5, 6.  Considering his record as an Account Executive as empirical evidence of his objective qualifications only, rather than his fulfillment of Roche's subjective expectations, Sweeney generally met or exceeded his sales quotas, and received some satisfactory performance reviews, excluding those immediately preceding his discharge.  Id. ¶¶ 5, 6, 8, 9, 13.

Roche does not materially dispute Sweeney's objective qualifications—indeed, Roche hired him for the position.  Roche's dispute centers on Sweeney's failure to perform the job at a satisfactory level of performance, which is a subjective consideration that is more appropriately scrutinized in the second phase of the McDonnell Douglas analysis.[5]  Therefore, Sweeney presented

---

[5] Facing a similar situation, Judge Vanaskie wrote:

> Here, Defendants have not submitted a list of job qualifications for Plaintiff's position, nor do they assert, in testimony or in the performance evaluations, that Plaintiff was not objectively qualified for his job, i.e., did not have the proper experience, education, training or competency (job requirements).  Instead, Defendants complain of his performance and misconduct (subjective traits).  Moreover, the fact that Defendants employed Plaintiff for over thirty years, and promoted him, belies any assertion that Plaintiff was not qualified . . . .  Although defendants have tendered substantial evidence of Plaintiff's poor performance and misconduct, this evidence is more appropriately considered at the pretext stage.  Thus, Plaintiff has made a sufficient showing that he was qualified for his job.

evidence indicating he was objectively qualified for his position for purposes of a *prima facie* case. See, e.g., Seibel v. Marketplace Direct, Inc., 2:05CV684, 2007 WL 788384, at *2 (W.D. Pa. Mar. 13, 2007) aff'd, 276 F. App'x 225 (3d Cir. 2008) (finding the plaintiff met his burden of qualification for a *prima facie* case because employer's complaints pertained to plaintiff's performance, not qualifications).

ii)    Circumstances that Raise an Inference of Discrimination

In order to meet his burden on the fourth prong of the *prima facie* case —that the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination—for the sex discrimination claim, Sweeney must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Iadimarco, 190 F.3d at 161. With respect to age discrimination, Sweeney can meet this burden by demonstrating that he "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Smith v. City of Allentown, 589 F.3d 685, 689–90 (3d Cir. 2009). Nevertheless, "replacement by someone younger, without more, will not give rise to an inference of age discrimination," unless the age difference is substantial. Maxfield v. Sinclair Intern., 766 F.2d 788, 792 (3d Cir.

_____

Slotterback v. Knoebel, 3:CV-07-0341, 2009 WL 1011052, at *8 (M.D. Pa. Apr. 14, 2009).

1985).  Additional evidence that "more favorable treatment for those not within the protected class will support an inference of age discrimination." <u>Bruno v. W.B. Saunders Co.</u>, 882 F.2d 760, 765 (3d Cir. 1989).

To meet his burdens, Sweeney offers two different species of evidence. First, he alleges that non-members of his class—namely, Jennifer Smith and Erica Holloway—were treated more favorably than Sweeney in that they were not negatively rated, disciplined, or terminated for failing to bring in new business. <u>See</u> Pl.'s SOF ¶ 36; Pl.'s Br. Supp., at 1.  Roche does not dispute that Holloway replaced Sweeney, but it does dispute the characterization that Smith and Holloway were both similarly situated and treated more favorably.

Moreover, Roche argues that its treatment of a number of other employees rebuts any inference of discrimination.  For example, during a 2008 reorganization, Roche discharged employees that were thirty-nine (39) and forty-eight (48) years old, while retaining Sweeney (fifty-six (56) at the time), a fifty (50) year old employee and a thirty-four (34) year old employee.  Def.'s SOF ¶¶ 26, 27. Additionally, Roche demonstrates that male employees both older than Sweeney received substantially higher performance ratings than Sweeney from DeFeo.  <u>Id.</u> ¶¶ 27, 28.

The fact that Roche replaced Sweeney with a woman in her 30s is

circumstantial evidence of age discrimination, but it does not satisfy the plaintiff's burden by itself when viewing all the pertinent facts in the light most favorable to the nonmoving party for the purposes of summary judgment. See Maxfield, 766 F.2d at 792. Thus, Sweeney's additional evidence of more favorable treatment for otherwise similarly situated employees outside the suspect class must be sufficient to meet his burden.

Analyzing whether someone is similarly situated to the plaintiff "requires the court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004); see also Tice v. Centre Area Transp. Auth., 247 F.3d 506, 518 n. 10 (3d Cir. 2001) ("[T]he process of determining which employees are 'similarly situated' to a plaintiff so as to allow for a meaningful comparison can be a complicated one."). A court should consider criteria such as job function, seniority level, disciplinary and employment history, existence of the same supervisor, and "other factors relevant to the particular workplace." Monaco, 359 F.3d at 305. Nevertheless, "[t]he term 'similarly situated individual' does not mean 'identically situated.'" Whitesell v. Dobson Commc'ns, 2:06CV0319, 2008 WL 474270, at *10 (W.D. Pa. Feb. 20, 2008) aff'd in part sub nom., Whitesell v. Dobson Commc'n, 353 F. App'x 715 (3d Cir. 2009).

Considering Erica Holloway, she was hired to replace Sweeney, so she had the same job function, title, and supervisor, namely DeFeo. Sweeney did have more sales experience and work history both within Roche and with other companies in the industry. Def.'s Br. Opp'n Pl.'s Mot. Summ. J. 7, Oct. 11, 2012, ECF No. 47 [hereinafter Def.'s Br. Opp'n]. Holloway did not have substantially more success in generating right-side business in her short tenure as Account Executive before this suit began, but she did receive higher performance ratings than Sweeney; his ratings suffered for failing at that very objective. Sweeney asserts that fact as evidence of discrimination, whereas Roche argues it had a right to expect more from Sweeney as a seasoned veteran.

Considering Jennifer Smith, facts remain in dispute pertaining to her job responsibilities and their similarity to Sweeney's that obscure, at this juncture, whether or not she was similarly situated. See Def.'s Br. Opp'n, at 7–9. Resting merely on these assertions, then, the survival of Sweeney's claim is tenuous.

Sweeney also alleges, however, through depositions and declarations of various Roche employee's, that DeFeo made a number of disparaging remarks indicating a predilection for age and race discrimination. See Pl.'s Br. Opp'n, at 1–5. For example, Sweeney alleges DeFeo stated that his hiring practices would make his sales team look like a "cheerleading team," that management was going

24

to think his hiring technique was to create a "harem," that he does not like working with employees who were "long in the tooth," and finds it easier to manage younger employees, among other mordant remarks.  Pl.'s Br. Opp'n, at 4–5. DeFeo and Roche categorically deny these allegations.  See, e.g., Def.'s Br. Supp., at 13 n. 4.  Therefore, these material facts remain in dispute.

Roche further argues that, even if these statements were true, they are not material to the case.  The Defendant alleges that these remarks would be nothing more than stray comments irrelevant to the proceeding at bar.  See, e.g., Reich v. Schering-Plough Corp., 399 Fed. App'x 762, 765 (3d Cir. 2010).  To support this argument, Roche cites cases in which the plaintiffs' primary evidence was comprised of only several arguably ambiguous and unrelated comments temporally removed from the locus of the action.  See, e.g., Reich, 399 Fed. App'x at 765 ("The only evidence Reich introduced regarding alleged age discrimination consisted of a remark by [the defendant] four or five years earlier, before he became her supervisor, referring to a job applicant as 'that old guy' . . . and his 2006 comment asking staff members about another applicant, 'Young and cute huh, ladies?'"); Martin v. Bayland, Inc., 181 Fed. App'x 422, 426 (5th Cir. 2006) ("Pointing only to Moses' 'it's time to retire' remark and two other innocuous retirement references, Martin also fails to establish that age was a motivating factor

in his termination.").

To the contrary, Sweeney has presented other evidence complimentary to the alleged statements. Moreover, if all those alleged are true, DeFeo's remarks cannot fairly be considered stray. This Court is persuaded by Judge Bumb's reasoning in the case against DeFeo in the District of New Jersey that his remarks do relate to the employment decision at issue because they concerned DeFeo's preference for managing young female workers rather than older employees. Brown-Marshall v. Roche Diagnostics Corp.,10-CV-5984 RMB-JS, 2013 WL 3793622, at *6 n. 4 (D.N.J. July 19, 2013) leave to appeal denied, 10-CV-5984, 2013 WL 5781320 (D.N.J. Oct. 25, 2013). Moreover, similar comments were repeated on several occasions—consequently, they are not so "stray" as to be non-probative. Id. DeFeo was a "decision-maker" in Sweeney's termination, which lends more weight to these remarks, if proven. See, e.g., Staud v. Proctor Hosp., 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011).

Viewing these facts in the light most favorable to Roche, the nonmoving party in Sweeney's summary judgment motion, and considering that DeFeo's alleged statements remain in dispute, the Court finds that Sweeney's motion for summary judgment fails at this juncture. See FED. R. CIV. P. 56(a). Those disputed material facts are central to Sweeney's claims.

For the purposes of Roche's summary judgment motion, the Court must draw all reasonable inferences in the light most favorable to Sweeney. <u>Anderson</u>, 477 U.S. at 255; <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n. 2 (3d Cir. 1983). Given that these material facts are in dispute, and if proven, would meet Sweeney's burden to present a *prima facie* case, Sweeney survives this prong of the <u>McDonnell Douglas</u> analysis in Roche's motion for summary judgment. The Court now turns to Roche's articulated legitimate non-discriminatory reason for firing Sweeney.

2)  <u>Defendant Articulates a Legitimate Reason for Discharge</u>

After the plaintiff has satisfied the elements of a *prima facie* case for the purposes of summary judgment, the burden of production then shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for its decision to discharge the plaintiff. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. As Justice Powell articulated:

> The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [discharge]. The explanation must be legally sufficient to justify a judgment for the defendant.

Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255–56 (1981).

Roche presents ample evidence of a legitimate, non-discriminatory reason for discharging Sweeney.[6] Sweeney was evidently not performing his job to a level acceptable to DeFeo and other Roche executives. An important responsibility of the Account Executive position was to pursue new business opportunities for Roche. Def.'s SOF ¶ 29. Sweeney failed to fulfill this duty.

When he was promoted to the Account Executive position, one account, Geisinger Medical Center, constituted about 75% of the business in his territory. By the time of his discharge, Geisinger constituted approximately 97% of the business in his territory and Sweeney only had one other account that comprised the remaining 3% of his business. Id. ¶ 56. During this period of poor performance, DeFeo and other Roche executives repeatedly implored Sweeney to diversify his book of business and develop one of the approximately forty-seven (47) available sales targets in his territory. Id. ¶ 57. They offered to provide him with the necessary support and tools to pursue more "right-side" business on several occasions. Id. ¶ 40. In spite of this, Sweeney failed to materially diversify his book of business.

In his final formal warning, the Performance Improvement Plan, DeFeo

---

[6] The facts are more substantially provided above, but the Court reiterates pertinent material facts at this juncture for the purpose of applying the McDonnell Douglas test.

presented a number of performance objectives for Sweeney to meet in order to more vigorously pursue his goal. Def.'s SOF ¶¶ 44–46. The PIP expressly warned Sweeney that if he failed to meet these objectives, he risked termination of his employment. Id. ¶ 47. Unfortunately for Sweeney, he did not materially satisfy the objectives and Roche subsequently terminated his employment, allegedly for that reason. Id. ¶¶ 48–55

These undisputed facts are more than sufficient to meet the Defendant's burden of articulating "some legitimate, non-discriminatory reason" to discharge the Plaintiff. McDonnell Douglas Corp., 411 U.S. at 802. Therefore, the burden shifts back to the Plaintiff to prove that the Defendant's stated reason for discharge was, in fact, pretext masking discrimination. See id. at 804.

      3)   <u>Proving Pretext</u>

To discredit Roche's articulated reason for discharging Sweeney, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reason for its actions that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 330 (3d Cir. 1995) (Cowen, J.) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) (Becker, J.)). Stated

another way, "a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 764.

For example, in Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006) (Becker, J.), the Third Circuit found that the plaintiff had adduced sufficient evidence to create genuine issues of material fact as to whether the defendant's proffered legitimate reasons for discharge were pretextual. In that case, the defendant claimed it discharged the plaintiff due to low evaluation scores because of his alleged lack of interest in the company program to which the scores applied. Id. at 708–09. The plaintiff asserted that this was fabricated and that he was more than interested in the program, which, among other things, presented sufficient disputed material facts to survive summary judgment. Id. at 711. Moreover, the court noted that "low evaluations scores may be a pretext for discrimination, especially where, as here, an employer uses subjective criteria such as 'attitude' and 'teamwork' to rate its employees." Id. at 706 (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 320 (3d Cir. 2000)).

To meet his own burden of proving pretext in this case, Sweeney presents,

*inter alia*, three main categories of evidence: that he consistently met his sales quota; that DeFeo treated Smith and Holloway more favorably than Sweeney as previously discussed; and, that DeFeo consistently made disparaging ageist and sexist remarks around Sweeney and other Roche employees.

First, Sweeney contends that consistently meeting his sales quota is evidence that he was performing his job satisfactorily and should not have been discharged, thereby raising the inference of pretext for his firing. See, e.g., Pl.'s SOF ¶ 25; Pl.'s Br. Opp'n at 7–8. Indeed, "the volume of sales may always be the primary measure of a salesperson's performance." Brewer, 72 F.3d at 331–32. Although the volume of sales may be the primary measure, it is not the only measure. In this case, the parties do not dispute that Sweeney was meeting his sales quota, which was not an issue. Roche's stated issue is not Sweeney's sales, but their undiversified nature. This evidence alone is not sufficient to carry Sweeney's burden.

Next, Sweeney contends, as previously discussed, that employees Smith and Holloway were similarly situated employees outside of Sweeney's protected class who were more favorably treated. Again, resting on those assertions alone, Sweeney's claim is insubstantial. See *supra*, at 23–24.

Nevertheless, Sweeney's allegations of DeFeo's repeated ageist and sexist

comments are material to this issue and remain in dispute.  See *supra*, at 25–27.

Although Roche's articulated reason is cogent and substantially supported, if

Sweeney can prove the veracity of those alleged and disputed comments at trial,

along with his other presented evidence, a reasonable jury *could* find Roche's

reasons are pretextual.  See, e.g., Brewer, 72 F.3d at 330.  Sweeney "has shown

sufficient implausibility and inconsistencies in [Roche's] primary rationales to

avoid summary judgement," albeit by a slim margin.  Tomasso v. Boeing Co., 445

F.3d 702, 704 (3d Cir. 2006) (Becker, J.).

### C) Collateral Estoppel

In a Motion to Supplement his Motion for Summary Judgment, Sweeney's

attorney filed the previously referenced decision reached in the United States

District Court for the District of New Jersey in the matter of Brown-Marshall v.

Roche Diagnostics Corp., 10-CV-5984, 2013 WL 3793622 (D.N.J. July 19, 2013),

claiming that this decision should be considered under the doctrine of collateral

estoppel.  Pl.'s Mot. Supplement Pl.'s Opp'n Def's Mott. Summ. J. 1, July 26,

2013, ECF No. 56 [hereinafter Pl.'s Mot. Supplement]. Plaintiff's counsel,

however, did not cite to a single case supporting this broad proposition, nor did he

articulate the elements of the collateral estoppel test, let alone allege that this

situation fulfills that criteria.  See id.

As the Third Circuit has stated, the "an issue is conclusively established in future litigation through the doctrine of collateral estoppel only when it is determined by a final judgment. . . . This principle is firmly established and beyond question." Anderson v. C.I.R., 698 F.3d 160, 166 (3d Cir. 2012) (citing G. & C. Merriam Co. v. Saalfield, December 16, 2013, 28 (1916)). Consequently, if there is no judgment there can be no issue preclusion. Id.

The Brown Marshall opinion Plaintiff cited merely denied the defendant's motion for summary judgment. Brown-Marshall, 2013 WL 3793622, at *1. Importantly, it did not render a final judgment. Therefore, collateral estoppel does not apply.[7] See, e.g., Anderson, 698 F.3d at 166.

### D) Punitive and Liquidated Damages

In his Complaint, Sweeney also requests punitive or liquidated damages for both the federal and state age and sex discrimination claims. Pl.'s Compl. ¶¶ 32, 41, 45, 49. In his Brief in Opposition to the Defendant's Motion for Summary Judgment, however, Sweeney withdraws the punitive damage claims under state law, because the Pennsylvania Supreme Court has held that punitive damages are not recoverable under the Pennsylvania Human Relations Act upon which those

---

[7] Because this issue was not determined on final judgment the Court need not reach the Third Circuit's four-part conjunctive test for collateral estoppel. See, e.g., Howard Hess Dental Labs. Inc. v. Dentsply Inter., Inc., 602 F.3d 237, 247–48 (3d Cir. 2010).

claims are founded.  See Hoy v. Angelone,  554 Pa. 134, 143, 720 A.2d 745,
749–50 (1998).  Therefore, the state law punitive damage claims are withdrawn.

With respect to the punitive damages claim under Title VII, those damages
are warranted in cases where the employer engaged in "intentional discrimination,"
42 U.S.C. § 1981(a)(a)(1), with "malice" or "reckless indifference" to the
employee's federally protected right.  Kolstad v. Am. Dental Ass'n, 527 U.S. 526,
535 (1999).  This standard pertains to the defendant's state of mind when
performing the alleged acts of discrimination.  See id.  Although discrimination of
an "egregious" nature is evidence indicating an employer possessed the requisite
mental state for punitive damages, a showing of egregious conduct is not necessary
to obtain punitive damages.  Id.

Further, "where an employee serving in a 'managerial capacity' committed
the wrong while 'acting in the scope of employment,'" liability for punitive awards
may be imputed to an employer.  Id. at 543 (quoting RESTATEMENT (SECOND) OF
AGENCY § 217C).  Nevertheless, "in the punitive damages context, an employer
may not be vicariously liable for the discriminatory employment decisions of
managerial agents where these decisions are contrary to the employer's good-faith
efforts to comply with Title VII."  Id. at 545 (internal quotations omitted).

As previously discussed, material facts remain in dispute with respect to

DeFeo's conduct—specifically, his alleged disparaging ageist and sexist remarks which, if proven, would be probative of his mental state. See id. at 535. Moreover, the Defendant has not specifically alleged Roche's good faith efforts to comply with Title VII, although the company's termination procedures do suggest a circumstantial inference on this point. See id. at 545. Nevertheless, this issue cannot be appropriately resolved on summary judgment as material facts remain in dispute. See FED. R. CIV. P. 56(a).

With respect to the liquidated damages claim under the ADEA, "a prevailing plaintiff is entitled to double damages 'only in cases of willful violations.'" Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (citing 29 U.S.C. § 626). A defendant's conduct is willful "if the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Id. at 126 (internal citations omitted). In meeting this standard, the Supreme Court has "rejected any requirement of 'direct' evidence of discrimination, 'outrageous' conduct by the employer or proof that age was the predominant rather than a determinative factor in the employment decision." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 (3d Cir. 1995) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993)).

Again, DeFeo's alleged ageist and sexist comments are disputed material

facts that would be probative on this issue.  As such, these claims are inappropriate for resolution on summary judgment here.  See FED. R. CIV. P. 56(a).

## III.   CONCLUSION

For the foregoing reasons, both the Plaintiff and Defendant's Motions for Summary Judgment are DENIED.  An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge